LAWRENCE HOLLAND, PLAINTIFF IN ERROR, V. THE
COMMERCIAL BANK OF WEEPING WATER, DE-
FENDANT IN ERROR.

1. **Evidence:** ARTICLES OF INCORPORATION OF BANKING COR-
PORATION. The written instrument presented in evidence by
the plaintiff at the trial in the court below, as containing the
articles of incorporation of the plaintiff in said action, though
certified by the secretary of state as a copy, contained intrinsic
evidence of being the original articles, the signatures thereto of
the corporators being proved as genuine; *Held,* Admissible in
evidence.

2. ———: BOOKS OF ACCOUNT. On the trial of the action plaint-
iff's books of accounts were introduced in evidence, and it was

---

*NOTE.—Decisions herein published as of this term are cases
argued and taken under advisement at July term, 1887, and filed
prior to January 5, 1888, when, under the constitution, Judge Reese
became Chief Justice.—REP.

shown that a greater number of the entries at specified dates were made by and in the handwriting of a clerk in plaintiff's employ, who was neither called nor subpœnaed to verify such entries, nor was his absence accounted for; *Held*, Error, and a new trial granted.

3. **Attachment:** MOTION TO DISCHARGE: EVIDENCE. On the trial of a motion to discharge an order of attachment to a judge at chambers, there being evidence tending to prove the absconding of defendant with intent to defraud his creditors, and that he had left the county of his residence to avoid the service of a summons, the same being grounds of attachment alleged in the affidavit for attachment, and the weight of the evidence not being clearly against the finding and judgment of the judge on said motion, the same *Upheld*.

THIS was an action commenced in the Cass county district court June 19, 1886, by the Commercial Bank of Weeping Water against Lawrence Holland and Tewksbury & Cooper, to recover the sum of $7,474.17, made up as follows: Balance upon a $4,000 note—$2,474.17. One note of $3,000, given by Holland to Tewksbury & Cooper and by them indorsed to the bank. Overdraft on defendant's bank account, $2,000. Tewksbury & Cooper demurred to the petition, and the same being sustained, by leave of court an amended petition was filed against Holland alone for the same amount, viz., $7,474.17. When the action was commenced an order of attachment was issued on grounds set forth in the opinion, and a motion to discharge it made before POUND, J., was denied. The answer of defendant Holland denied, *First*, The corporate existence of plaintiff. *Second*, Admits execution of notes sued on, admits payment on one of said notes the sum of $1,535.83. As a third defense, averred that plaintiff held two mortgages, executed by defendant and wife on certain real estate, which were given to secure payment of two notes, one for $2,000 and one for $4,000, the last named note being one of the notes sued on in this action; and that in consideration that the debt of $6,000, less the credit of $1,535.83, as evidenced by said two notes, and secured by

said mortgages, should be satisfied, paid, and canceled, and as a further consideration that plaintiff should pay to defendant, or give defendant credit on any debt found to be due from defendant to plaintiff, the sum of $1,500, the defendant bargained and sold to the plaintiff the real estate in said mortgages described, and defendant and wife executed good and sufficient deeds to said property. And as a fourth defense, defendant averred that, in consideration that plaintiff pay defendant or give defendant credit on any debt found to be due plaintiff from defendant, the sum of $1,000, the defendant bargained and sold to plaintiff certain described real estate and gave good and sufficient deeds therefor. And as a fifth defense, averred that, in consideration of the sum of $1,055, he sold to plaintiff certain valuable paid-up corn contracts, for which he was to receive credit on the debt sued for in this action the sum of $1,055. And as a sixth defense, averred that, in consideration of the premises as above set forth, defendant has more than paid plaintiff all of the indebtedness claimed to be due it, etc., and after allowing all claims and demands due, plaintiff became indebted to defendant in the sum of $2,081. And as a seventh defense, averred that $2,000 of the pretended consideration for said note of $4,000 was money advanced by plaintiff as a "marginal" contract or deposit, and it was then and there expressly agreed that the same should be invested in name of defendant in grain options, and if the market went in favor of defendant and he made a profit thereby, then the plaintiff was to receive part of said profit, not to exceed $100, for the use of the money so invested; that in said transaction said $2,000 was so gambled, squandered, and lost, and so much of said note defendant received no consideration therefor. With prayer for judgment against plaintiff for $2,081 and costs of suit.

The reply to the above answer was a general denial. Upon trial before HAYWARD, J., and a jury, there was a

a verdict in favor of the bank for $5,962.17; motion for new trial was overruled and judgment was entered on verdict; to reverse which, Holland came up on a petition in error.

*J. H. Haldeman* and *Charles O. Whedon,* for plaintiff in error, on admission of articles of incorporation, cited : Comp. Stat., Sec. 13, Ch. 73.  *Oliver v. Persons,* 30 Ga., 391.  *Hanson v. Armstrong,* 22 Ill., 442.  *Carr v. Carr,* 36 Mo., 408.  Books of account.  Code. Sec. 346.  Attachment proceedings.  *Robinson v. Burton,* 5 Kan., 294. *Steele v. Dodd,* 14 Neb., 496.  *Hunter v. Soward,* 15 Neb., 215.  *Young v. Cooper,* 12 Neb., 610.

*H. D. Travis* and *E. H. Wooley,* for defendant in error, on attachment proceedings, cited : Code, Sec. 199.  Maxwell's Pl. and Pr., 230.  *Young v. Nelson,* 25 Ill., 566. *Morgan v. Avery,* 7 Barb., 664.  *North v. McDonald,* 1 Biss., 57.  Waples on Attachment, p. 80.

COBB, J.

The first point upon which plaintiff in error claims a reversal of the judgment is the alleged failure of the plaintiff in the court below to prove and establish its corporate existence on the trial, such corporate existence having been denied and put in issue by the answer.

The paper purporting to contain the articles of incorporation, as it appears in the bill of exceptions, is evidently a copy and not an original paper, and yet there is intrinsic evidence to be gathered from the bill of exceptions that the original paper was offered and admitted in evidence. It appears that at the commencement of the trial the plaintiff offered in evidence the records of the incorporation of the bank.  " The defendant objects to the introduction of this paper, for the reason that there is no foundation laid for it, and it is therefore incompetent."  The offer was tem-

porarily withdrawn. C. H. Parmele was then sworn as a witness for the plaintiff, and upon his examination testified to the genuineness of *five* of the signatures to the paper. J. M. Robinson was then introduced as a witness, also on the part of the plaintiff, and upon his examination verified the remaining signatures. The plaintiff then renewed its offer of the records of the incorporation of the bank. The defendant objected, "as no foundation laid, and incompetent." The court overruled the objection. The paper, as it appears in the bill of exceptions as plaintiff's exhibit " A," is type-written, in the same type as the body of the bill of exceptions, as well the body of the articles of incorporation, as the signatures of the incorporators, the endorsement of its filing by the county clerk, two certificates of acknowledgment by notaries public, and a certificate by the secretary of state. In this latter certificate the secretary of state certifies that the same is a true and perfect *copy* of the original articles of incorporation on file in his office. It is impossible to conceive that this is the identical piece of paper which was before the said witnesses, the signatures to which they swore to be in the " genuine handwriting" of the corporators, and which upon evidence was admitted by the court. The paper admitted was not objected to, as a copy, and not an original paper, and yet it cannot be denied that the language of the objection was broad enough to admit of a construction covering that point.

If the paper as now found in the bill of exceptions is the identical paper that was offered and given in evidence, the court erred in overruling defendant's objection to its admission. If on the other hand, it was substituted in making up the bill of exceptions, for the one actually given in evidence, without a stipulation or leave of the court, then it evidences a degree of carelessness in practice which ought not to be indulged in. Further on in the bill of exceptions this circumstance is repeated. The defendant

swears that certain deeds offered in evidence by him are in the handwriting of Mr. Wooley, that he saw him write them; yet the deeds appear in the bill of exceptions in the ordinary type-writing, evidently copies, but nowhere called copies.    It turns out, however, that the question thus involved is not of great importance in the case. The action was founded in part upon a promissory note executed and delivered to the plaintiff by its corporate name.    In such case it has been held unnecessary to prove the corporate existence of the bank, in a suit by it on such note, and such is the law as stated in the last clause of section 144 of chapter 16, Comp. Stat.    See, also, *Cowan v. The State*, in this court, a recent opinion, *ante* p. 519, and cases there cited.

The second point of contention in the brief is upon the admission in evidence of the cash book of defendant bank. The evidence applicable to that matter is as follows, J. M. Roberts, a witness on behalf of the plaintiff, being on his examination-in-chief, and having testified that he was the cashier of the plaintiff:

Q.    I will ask you what book this is?

A.    The ledger.

Q.    Is that account in your handwriting?

A.    Yes, sir.

\*        \*        \*        \*        \*        \*        \*

Q.    What book is that you have?

A.    Cash book.

Q.    Is that your original entry book?

A.    Yes, sir.

Q.    Please turn to it, on February 19, 1886, and state whether there appears upon that book any entry in favor of or against Lawrence Holland?

A.    Yes, sir.    Both $69.33 debit and $150 credit.

Q.    Turn to the 20th day of February, 1886.    Do you you find any entry there for or against Lawrence Holland, the defendant?

A. I find two entries against the defendant.

Q. Is that your book of original entries?

A. Yes, sir.

Q. Does it show continuous transactions between you and the defendant and the bank and other parties?

A. Yes, sir.

Q. Was it kept by yourself?

A. Yes, sir.

Q. I wish you would read those entries?

The defendant objects, as no foundation laid, and immaterial. Overruled.

A. L. Holland, there is a debit of $100. L. F. Holland, there is a debit of $34.20.

Q. Turn to the 22d of February, 1886. [The plaintiff offers in evidence the line on this page, 173, upon which appears the figures, 373, in red ink, being the second time such figures appear upon said page.] State to the jury the amount?

Court. It is against the defendant, is it?

A. Yes, sir, it is $13.70. All we have been reading yet are debits.

This examination was continued at great length, without further objection. Witness was cross-examined by defendant, re-examined by plaintiff, and re-cross-examined by defendant. I quote:

Q. Do you say that you kept the books there that you have testified to, here, yourself, that they are in your handwriting?

A. Not clear up to date.

Q. Up to the 19th of June were all the entries in your handwriting?

A. No, sir.

Q. In whose?

A. Part of them in Mr. Smith's.

Q. What part of them?

A. I can't tell without looking?

37

Q.   Did you not testify when the book was introduced that the books were in your handwriting.

A.   I testified up to the 18th of February, and after that some time.

Q.   How long after that time?

A.   Somewhere in March, somewhere about the middle, I think.

Q.   And the others are not in your handwriting?

A.   Part are, and part are not.

\*        \*        \*        \*        \*        \*        \*

Q.   There are about two-thirds of them that are not in your handwriting?

A.   I can't say as to the amount.

Q.   What would be your best judgment?

A.   I usually call the checks over, and he writes them down.

Q.   About how many were in your handwriting?

A.   I can't say.

Q.   Were those in your handwriting entered upon the book in the first instance?

A.   Yes, sir.

\*        \*        \*        \*        \*        \*        \*

Q.   Just look at these items and state whether that is in your handwriting, on page 248, in red ink, 367, cash book?

A.   No, sir.   That is in Mr. Smith's.

Q.   Do you see entries there in your handwriting?

A.   That day Mr. Smith wrote up all.

Q.   And you do not know whether that is correct or not?

A.   I do.

The plaintiff here rested its case.

Defendant moved to strike out that portion of the book that is not in the handwriting of the witness, on the ground that there is no foundation laid.   Overruled.

The provision of the statute governing the introduction of books of account in evidence is as follows:

"*First.* The books must show a continuous dealing with persons generally, or several items of charges at different times, against the other party, in the same book.

"*Second.* It must be shown, by the party's oath, or otherwise, that they are his books of original entries.

"*Third.* It must be shown, in like manner, that the charges are made at or near the time of the transaction therein entered, unless satisfactory reasons appear for not making such proof.

"*Fourth.* The charges must also be verified by the party or the clerk who made the entries, to the effect that they believed them just and true, or a sufficient reason must be given why the verification is not made." Civil Code, Sec. 346.

It appears from the above testimony that the first, second, and third clauses of the above section of the statute governing the production of account books in evidence, were substantially complied with; but not so of the fourth clause. It appears that many of the entries of charges introduced were not in the handwriting of the witness, but in that of Mr. Smith. The latter was not produced as a witness, nor was there any reason given for not producing him. It would seem that he was a clerk, or teller, in the employment of the plaintiff at the time of making these entries, and he will be presumed still to be, or at least to be within the reach of a subpœna, until the contrary is shown. I understand the meaning of the statute to be that in cases where the party himself made the entries he shall verify them to the effect that he believes them just and true, and where the entries are made by a clerk who is still living and within the reach of a subpœna, he must be produced and the entries verified by him. Here the entries were not verified in the manner nor to the effect required by statute by any one. This applies even to the entries made by the cashier, who was sworn as a witness. The testimony of the witness, as to the handwriting of Smith, was

inadmissible for the purpose of proving the book accounts, without first laying a foundation for such evidence by proving his death or absence.

Having come to the conclusion that there must be a new trial for error in the admission of the books of the plaintiff without their being verified according to the statute, the remaining assignments as applicable to the trial of the issues before the district court will not be considered.

The seventeenth, eighteenth, and nineteenth errors assigned are based upon the proceedings before Hon. S. B. Pound, district judge, at chambers, on the motion of the defendant to discharge the attachment and in overruling said motion.

The seventeenth assignment, being the first under this head, is directed to the form of the affidavit for the order of attachment.    Plaintiff in error in the brief says: " There are three claims and causes of action set forth, and the affidavit does not state that each of these claims are just," etc.

Section 199 of the civil code provides that, " An order of attachment shall be made by the clerk of the court    *
*   *   *   when there is filed in his office an affidavit of the plaintiff, his agent, or attorney, showing : *First,* The nature of the plaintiff's claim.    *Second,* That it is just. *Third,* The amount which the affiant believes the plaintiff ought to recover.    *Fourth,* The existence of some one of the grounds for an attachment enumerated in the preceding section."

The affidavit, after reciting the commencement of the action by the plaintiff against the defendant in the district court of Cass county, proceeds—" to recover the sum of $7,474.17 now due and payable to the plaintiff from defendant upon one promissory note for $4,000, dated February 18, 1886, on which there is a balance now due of $2,474.17, signed by Lawrence Holland and made and delivered to the said plaintiff; also $2,000 money advanced to defendant at his instance and request by plaintiff; also

$3,000 on note dated August 31, 1885, to Tewksbury & Cooper, and by them endorsed and transferred to plaintiff herein. Affiant further says that said claim is just, and that the plaintiff ought, as he believes, to recover thereon the sum of $7,474.17," etc.

I think this affidavit a sufficient compliance with the statute. The word *claim*, as used by the affiant, clearly refers to the entire claim of seven thousand four hundred seventy-four dollars and seventeen cents, and although as a matter of description he afterwards separates the claim into several parts, it was not, in my opinion, necessary that he should declare his belief in the justness of each subdivision or item of the claim.

But the chief ground of contention, as against the action of the court at chambers in overruling defendant's motion to quash the attachment, is the untruth of the affidavit upon which the order of attachment was issued. The allegations of the affidavit to which attention is thus directed are as follows : "And that the defendant, Lawrence Holland, has absconded with intent to defraud his creditors. Affiant further says that he has left the country to avoid the service of a summons, and that he so conceals himself that a summons cannot be served upon him. Affiant further says that defendant has property or rights in action which he conceals, and that he is about to convert a part of his property into money for the purpose of placing it beyond the reach of his creditors," etc. In support and resistance of the motion there were produced and read to the judge, at the hearing, forty-two affidavits, many of them quite lengthy, besides several voluminous official records and certificates. These papers are contained in one of the bills of exceptions, where they are placed without regard to order or sequence. The time at my command is not sufficient to enable me to make that exhaustive examination and study of these papers which I would wish, or which doubtless was made by the judge (who decided the question) on the motion at chambers.

The plaintiff bank is situated and doing business at Weeping Water, Cass county, at which place the defendant resides. The said affidavits tend to prove that for a year or more previous and up to about the 12th day of June, 1886, the defendant was engaged in buying and shipping grain, shipping and selling lumber, at Weeping Water and other points, and dealing in *options* on the grain market of St. Louis; that he had a contract with a firm at Chicago. by which they were to advance him 15 cents per bushel on all corn bought and held by him. He had become largely indebted to the plaintiff on notes and overdraft, and involved in large litigation at St. Louis, besides other financial complications. About this time the Chicago firm withdrew the contract by which they were to make advances on corn, and the defendant found himself greatly embarrassed for the want of funds to carry on his business, as well as to meet the pressing demands of the plaintiff. At this. time he represented to the cashier of the plaintiff that by his going to the village of Friend, where he had formerly resided, which place is situated some fifty or sixty miles. west of Weeping Water, he could, as he believed, obtain money or security to meet his pressing wants, and with the concurrence of said cashier he left his home with the avowed purpose of going to said village of Friend on the said business ; that defendant left Weeping Water for the purpose aforesaid, on the 14th day of June, giving out that he would be absent not to exceed two days. On the same day, the 14th, he wrote from Friend to the cashier of the plaintiff, at Weeping Water, that he would not be at home until Thursday evening, which would be the 17th day of the month; that he must go out in the country for a day or two ; that he might go down Wednesday noon, but could not tell yet, but when he did get down he thought he would be in shape to help him out in cash; that defendant did not return to Weeping Water until the 25th day of June, after the suit was commenced and the attachment

sued out; neither did he write to, nor hold any communication with, the plaintiff (after the said letter) or its cashier or any officer or person connected with it. Also, that early in the morning of the 19th of June, the wife of defendant, who had, up to that time, remained at their home at Weeping Water, left their said home taking her trunk and took the train for Omaha and the East, after having, the evening before, admitted to the cashier of the plaintiff that she had just received a letter from the defendant and that he had left the village of Friend, but refused to tell him where he had gone, or at what place he had written said letter to her.

These facts are all sworn to, positively, and nearly all of them are uncontradicted. But it matters not if they were contradicted, for the purposes of a reviewing court. The question, as I understand it, is, had the trial judge evidence before him to justify him in making the decision which he made? If he had, such decision must be sustained by this court, although such evidence was contradicted by other evidence in every particular, or explained away to such an extent as to lead us to the conclusion that were it presented to us as an original question, we would decide it differently, unless the preponderance of evidence against the decision is clear and manifest. Such was the holding of this court in the case of *Mayer & Schurmann v. Zingre,* 18 Neb., 458. But, on the contrary, while the defendant in his affidavit explains where he was during this time—that on Wednesday, the 16th, he started for Weeping Water expecting to get there that night, or next day; that he went by way of Omaha, where he had some business to look after; that while there he learned that " he could get to Chicago on cut rates, which was $3 for the trip, and having before this contemplated visiting Chicago and Detroit, with his wife, who was rather sickly and needed recreation, he wrote her at Weeping Water, from Omaha, that he would go on to Detroit while

the rates were low, and that his wife should follow as soon as convenient, but in time if possible to get reduced rates. He was informed that rates might be reinstated at any time, hence his sudden departure for Detroit. While in Detroit, but a short time, waiting for his wife, on the 24th of June, 1886, he received a letter from her stating that said plaintiff had commenced this action, and that attachments were being placed on his property, and that his presence was needed at once," etc. Yet, I am not prepared to say that the judge was obliged to accept this explanation as true, or satisfactory; or that he had not evidence before him to sustain the charge of absconding with intent to defraud his creditors, or of having left the county of his residence to avoid the service of a summons.

There was also evidence tending to prove the other grounds of attachment charged in the affidavit for attachment, but which it is deemed unnecessary to review.

The finding, ruling, and order of the district judge, at chambers, in overruling the motion and application of the defendant to quash, dissolve, and discharge the attachment, is affirmed. And the judgment of the district court is reversed, with costs in this court, the costs of the district court to abide the result of a new trial, and the cause remanded to the district court for further proceedings in accordance with law.

JUDGMENT ACCORDINGLY.

THE other judges concur.