FRANK W. CLARK v. STATE OF NEBRASKA.

[FILED JUNE 30, 1891.]

1. **Instructions** must be based upon the testimony, and where an instruction has been given without testimony to support it, and it is apparent that the accused has been prejudiced thereby, the judgment will be reversed.

2. **Witnesses:** PARTY'S TESTIMONY. Where a person on trial for a crime testifies in his own behalf, the court may instruct the jury that in weighing his testimony they may consider his interest in the result of the suit. The court, however, cannot, by repeating its statement in that regard, give it undue weight or say aught calculated to disparage the testimony of the accused.

3. ———: THE CREDIBILITY of the witnesses is for the jury to determine.

ERROR to the district court for York county. Tried below before SMITH, J.

*France & Harlan,* for plaintiff in error, cited: *Middleton v. State,* 52 Ga., 527; *Childers v. State,* Id., 106; *Garrett v. Gonter,* 42 Pa. St., 143; *State v. Bell,* 29 Ia., 316; *Mooney v. State,* 33 Ala., 419; *State v. Garvey,* 11 Minn., 154; *Pigman v. State,* 14 O., 555; 1 Bishop, Crim. Law, sec. 492; *Tallafers v. Com.,* 77 Va., 411.

*William Leese, Attorney General, contra,* cited: Maxwell Crim. Proc., 227; *Pigman v. State,* 14 O. St., 555; *People v. Rogers,* 18 N. Y., 9; *Rafferty v. People,* 66 Ill., 118; *Polin v. State,* 14 Neb., 546, 547; *St. Louis v. State,* 8 Id., 415; *Murphy v. State,* 15 Id., 389; *Ingram v. State,* 24 Id., 39; *Clough v. State,* 7 Id., 341; *Olive v. State,* 11 Id., 30; 1 Greenleaf, Ev. [14th Ed.], sec. 380; *Carrol v. State,* 5 Neb., 31; *Brown v. State,* 18 O. St., 509; *Allen v. State,* 10 O. St., 287.

MAXWELL, J.

In April, 1890, an information for burglary was filed against the plaintiff in error and one William D. Friend, in which it was charged that on the 24th day of March, 1890, at the hour of 11 o'clock in the night season, they feloniously, burglariously, and forcibly did break and enter the storehouse of one Emmett H. Dorr, with intent to steal the goods and chattels of said Dorr.  Friend pleaded guilty to the charge, and afterwards the plaintiff in error was tried, found guilty, and sentenced to imprisonment in the penitentiary for the period of one year.

The testimony shows that the drug store of Emmett H. Dorr had been broken into in the night season and a quantity of whisky and cigars taken.  It is claimed that a small amount of money was also taken.  The testimony also shows that one Friend did the breaking, while it is claimed that the plaintiff in error watched on the outside and assisted in carrying away the stolen property.  The undisputed testimony shows that the plaintiff in error, prior to the time of the commission of this offense, had borne a good character for honesty and integrity; that he had suffered from sunstroke while in the army during the rebellion, from which cause the use of intoxicating drink produced a species of frenzy which, for the time being, rendered him almost insane.  The testimony also shows that on the day in question, intoxicating liquor had been furnished from Mr. Dorr's drug store to parties named Bell, Friend, and the plaintiff in error, in quantities sufficient to produce intoxication.  The testimony of Friend on that point is as follows:

Q. You say you had been drinking that day, do you?
A. Been drinking that day?
Q. Yes.
A. I think I had one drink that day.
Q. Where did you get it?

A. I got it at my own house.

Q. Where did you get it to take it to your own house?

A. I got it at Dorr's drug store.

Q. How many times had you got it that day?

A. I don't know that I did one time that day.

Q. How many times did you get it at any time any day?

A. I think I have got it four times in one day.

Q. Of Dorr?

A. Not of Mr. Dorr himself every time, but in his store.

Q. From that bartender of his?

A. Yes, sir.

Q. How many times did you get it of the bartender?

A. Three times.

Q. And once of Dorr?

A. Yes, sir.

Q. Were you intoxicated?

A. I was, just to a certain extent.

Q. Were you drunk?

A. No, sir, I was not.

Q. What day was it you got it so many times?

A. Why, there were three other men wanted me to get it for them; I got it for somebody else.

Q. Did you tell Dorr you wanted it for medicine?

A. When I got it the first time of Dorr I got it for medicine and used it for medicine.

Q. You told his bartender you wanted it for medicine, didn't you?

A. I did not.

Q. Did you tell him what you wanted it for?

A. I did not.

Q. He didn't ask you?

A. No, sir, not that I recollect of.

Q. You say that you got it for somebody, who did you get it for?

*        *        *        *        *        *        *

A. For other parties.

If we may judge from the testimony before us, whisky was one of the principal articles dealt in by Mr. Dorr.

There is also testimony in the record tending to show that a Mr. Bell, one of the principal witnesses in this case, was intoxicated on the night in question and was in conference with the plaintiff in error and Friend before the alleged breaking; that whisky or alcohol had been procured for him by a friend at Dorr's drug store, although Bell's mother had notified all the persons in town who sold intoxicating drinks not to furnish any to her son.

A drug store where intoxicating liquor is freely sold, is a curse to any town or city and should be suppressed. The desire of those whose appetite for liquor had been inflamed by that which they had imbibed from this drug store, is shown to have led to the breaking.   More liquor was wanted by men already intoxicated.   This furnishes no legal excuse for the burglary, but is a circumstance in the case.

There is no testimony in the record tending to show that the plaintiff in error intended to break into the drug store while sober, or that he drank intoxicating liquors for the purpose of nerving himself to commit the act.   The court, however, instructed the jury:

"Where a person, at the time of the commission of an alleged crime, has sufficient mental capacity to understand the nature and quality of the particular act or acts constituting the crime, and the mental capacity to know whether they are right or wrong, he is responsible if he commits such act or acts; but if he does not possess this degree of capacity then he is not responsible.   And in this case if you believe from the evidence that the defendant was so drunk that he did not know right from wrong, at the time said crime is alleged to have been committed, then you should find the defendant not guilty, unless you are satisfied from the evidence beyond a reasonable doubt, that the defendant had entered into an agree-

ment with one or more persons to commit said alleged crime, of which he stands charged, at a time when he possessed the mental capacity to know the nature and quality of the particular act or acts constituting said alleged crime, but voluntarily became intoxicated to better nerve himself to commit the crime, and if you so find from the evidence beyond a reasonable doubt, then the fact of any such drunkenness would be no excuse, and in law the defendant would be held responsible for what he did."

This instruction, so far as it referred to the plaintiff in error becoming intoxicated in order to nerve himself for the commission of the act, is entirely unsupported by the evidence and is very prejudicial, and for which the judgment must be reversed. The court also places too much stress upon the interest of the plaintiff in error in the case. He speaks of this interest in the eighth instruction, and again refers to it, in a manner calculated to disparage the testimony of the witness, in the ninth instruction. While it is true that the jury may consider the interest of the witness in the result of the suit in determining his credibility, yet it does not follow that his interest will prevent him from telling the truth. His testimony, notwithstanding his interest, may be entirely truthful and reliable. He may be an honest man falsely accused, whose testimony not only is true, but will bear the closest analysis. Neither the court nor jury should assume that the testimony of a witness is false, nor so decide without cause. The facts in a case are to be determined from a patient, careful examination of the testimony of the several witnesses. From the necessity of the case the credibility of the witnesses must be determined by the jury, but there should be adequate cause for rejecting the testimony of any witness.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.