FRANK DONNER V. STATE OF NEBRASKA.

FILED JUNE 30, 1904.   No. 13,436.

1. **Larceny:** EVIDENCE. A record kept by a stock yards company of the receipt, handling and disposition of car or train loads of stock, copied from a book or tab of original entries and from hearing another read the railroad company's waybills, is not competent evidence in a criminal case for the purpose of tracing cattle, alleged to have been stolen, to the possession of the accused.

2. **Witness:** INSTRUCTION. The law makes a defendant in a criminal trial a competent witness in his own behalf, and the court should in no manner disparage his evidence. Therefore, an instruction, otherwise correctly stating the rules by which the jury should determine the weight to be given to the evidence of the accused, and which concludes with the words, "You are not required to receive blindly the testimony of such accused person as true, but you are to consider whether it is true and made in good faith, or only for the purpose of avoiding conviction," is prejudicial to the defendant's rights.

ERROR to the district court for Antelope county: JOHN F. BOYD, JUDGE, *Reversed.*

*Jackson & Williams* and *Brome & Burnett,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, contra.*

BARNES, J.

Frank Donner was charged, in the district court for Antelope county, with the larceny of two steers, the property of one John Thompson. A trial resulted in his con-

viction, and he was sentenced to the penitentiary for the term of four years. On error proceedings the judgment was reversed and the cause remanded for a new trial. He was again tried, found guilty and sentenced to the penitentiary for a term of six years. From that judgment he brings error, and the case is now before us for the second time.

It appears that the steers described in the information were kept in the pasture of one Henry Wilson, situated in said county, and were seen there up to a short time before July 17, 1902, the date at which it was alleged they were stolen. It was shown that the plaintiff had a car load of stock in his possession on the 16th day of July, 1902, in the stock yards of the Fremont, Elkhorn & Missouri Valley railway company, at Oakdale, in Antelope county, Nebraska, and on that day shipped the cattle, consigned by the Antelope county bank, to the commission firm of Shelley, Rogers & Company, at South Omaha. It further appears that on the morning of the 17th day of July, 1902, a car load of stock was received by the South Omaha Stock Yards Company, which it is claimed was delivered to Shelley, Rogers & Company, and sold by that firm and accounted for to the Antelope County Bank. The testimony discloses that one of the steers in question was shortly afterwards found in the stock yards of Shelley, Rogers & Company; that it was purchased from them and shipped back to Antelope county. There was no direct testimony that the stolen cattle were in the plaintiff's possession in the stock yards at Oakdale with the cattle which made up his car load of stock shipment from that place to South Omaha, and in order to trace the stolen property it was necessary for the state to show that the identical shipment of cattle made by the plaintiff from Oakdale to South Omaha, after having been received by the stock yards company, was turned over to Shelley, Rogers & Company, and that the steer described in the information and found in the yards of the last named company was contained in said shipment. In this manner the state

sought to show that the stolen property had been in the possession of the plaintiff. In order to make this proof the state introduced in evidence a book said to have been kept by the Omaha Stock Yards Company, which is referred to in the bill of exceptions as exhibit "D." The introduction of this evidence was objected to as incompetent, immaterial, hearsay, and because the proper foundation had not been laid. The objection was overruled in so far as it related to page 2 of the book offered, and the same was received and read in evidence over the plaintiff's objections. This is assigned as one of the grounds of error. It appears that one William R. Thompson identified exhibit "D" and testified that he made it up from a tab that he used in the yards at the time the train containing the car load of cattle in question was backed into the chutes at the South Omaha Stock Yards, and from hearing another person read the way-bills. His cross-examination discloses the following facts in relation to this book.

Q. Mr. Thompson, the only entry that you made out at the time this car was backed into the chutes was the figures in the line under the words "car number"? A. Yes, sir. Q. That was the only entry you made in this book at the time you was out in the yards—at the time the cars were backed in? A. I copied this off of my tab. Q. You made no entries in this book at the time you were out in the yards? A. No, sir. Q. This book that you have here is a book that is made up afterwards? A. Yes, sir. Q. After these entries are put onto a book which you use in the actual work of checking they are afterwards transferred to this book? A. Yes, sir.

Thereupon counsel moved the court to strike out the entries on page 2 of exhibit "D" because they were hearsay, incompetent and immaterial, not the best evidence, and because no proper foundation had been laid sufficient to authorize the book to be received in evidence. The court overruled the motion, and the defendant excepted. This was the only way by which

the state attempted to trace the car load of cattle from the railroad company into the hands of the the stock yards company, and from that company to the consignee. It thus appears that the evidence in question was very material, and without it the stolen cattle were not traced into the possession of the plaintiff. It is therefore necessary for us to determine whether the court erred in receiving the book exhibit "D" in evidence. This book was not a book of accounts; neither was it a book of original entries, nor the original record of the transaction relating to the car load of stock sought to be traced from the possession of the plaintiff into the hands of Shelley, Rogers & Company. It appears from the evidence of the man who says that he made the entries that as to the record of the receipt of the car and its number, there was better evidence than the book. He testifies that the original entry or record was made on another book or tab, which he had in his possession in the stock yards at the time the stock was checked in. It further appears that he did not make the other entries in the book from his own examination or knowledge, but from hearing another person read the way-bills of the railroad company. He nowhere testifies that he ever compared the entries so made with the way-bills themselves, or with his book or tab of original entries, and strange to say he was not asked as to whether or not the entries contained in exhibit "D" were correct. So it clearly appears that no proper foundation was laid for the introduction of this evidence. Original books of account or letters cannot be admitted in evidence until the proper foundation has been laid. *Norberg v. Plummer*, 58 Neb. 410. In the case of *Holland v. Commercial Bank*, 22 Neb. 571, it was held error, and a new trial was granted on account of the introduction of books of account made by and in the handwriting of a clerk, who was neither called nor subpoenaed to verify the entries therein, nor was his absence accounted for. Books of account are receivable in evidence only when verified in the manner provided by section 346 of the code. *Gilbert*

*v. Merriam,* 26 Neb. 194; *Pollard v. Turner,* 22 Neb. 366; *Atkins v. Seeley,* 54 Neb. 688. The book in question does not even purport to be a book of accounts. The most that can be said for it is that it is a record of car loads of stock received by the stock yards company, and it would seem that, being in the nature of a memorandum, even with the proper foundation laid, it could only be used by the witness who made it for the purpose of refreshing his recollection. This same book was offered and received in evidence on the former trial of this case. On that trial no evidence was introduced to show who made the entries therein, when they were made, or under what circumstances. For these reasons its admission was held error. It is apparent, from an examination of the record herein, that the state attempted to supply such omission on the second trial. In doing so it was disclosed that the book was not one of original entries, and was therefore not the best evidence. The failure to produce the original entries, or in other words the best evidence, was not explained, and the witness who copied such original entries into the book in question did not even testify that they were correct. So it is clear that the admission of this evidence was reversible error.

Plaintiff further complains of certain instructions given by the court on his own motion. It is said that although it was not reversible error to give either of the instructions numbered 8 and 9, yet the giving of both of them grouped together was prejudicial to the plaintiff. Both of these instructions define and explain a reasonable doubt. It is apparent that either one of them would have been sufficient, and that one is practically a repetition of the other. We have held, in several cases, that it is not reversible error to repeat an instruction unless it appears that such repetition might operate to the prejudice of the accused. Yet, we are frank to say that we are unable to commend such a course.

It is furt' er contended that the court erred in giving instruction No. 10, on his own motion. This instruction

concludes with the words: "You are not required to re-
ceive blindly the testimony of such accused person as true,
but you are to consider whether it is true and made in
good faith, or only for the purpose of avoiding convic-
tion." It is urged that it was reversible error for the
court to thus suggest to the jury that the testimony of
the defendant may have been given for the purpose of
avoiding a conviction; and that this suggestion was cal-
culated to disparage the testimony of the accused. The
case of *Clark v. State,* 32 Neb. 246, is cited in support of
this contention. In that case it was held that, "where a
person on trial for a crime testifies in his own behalf, the
court may instruct the jury that in weighing his testimony
they may consider his interest in the result of the suit.
The court, however, cannot, by repeating its statement in
that regard, give it undue weight or say aught calculated
to disparage the testimony of the accused." The state, to
support the instruction, cites the case of *Carleton v. State,*
43 Neb. 373, where the trial court charged the jury as
follows: "The jury are instructed that they have no right
to disregard the testimony of the defendant on the ground
alone that he is a defendant and stands charged with the
commission of a crime; nor are the jury required to blindly
receive the testimony of the defendant as true, but the jury
are to fully and fairly consider whether it is true and made
in good faith, and for this purpose the jury have a right to
consider the interest of the defendant in this prosecution.
The law presumes the defendant to be innocent until he is
proved guilty by the evidence beyond a reasonable doubt,
and the law allows him to testify in his own behalf, and
the jury should fairly and impartially consider his testi-
mony together with all the other evidence in the case,
and if from all the evidence, the facts and circumstances
proved, the jury have any reasonable doubt of the guilt
of the defendant as charged in the information, then the
jury should give the defendant the benefit of the doubt and
acquit him." The court after much discussion, in which
it was said that "true" and "made in good faith" were

synonymous terms, reluctantly approved of the foregoing instruction; but it will be observed that the instruction complained of, in this case, is much broader in its terms, goes farther and is more prejudicial to the accused than the one above quoted. In that instruction it was not suggested that the testimony of the accused might have been given in bad faith, and for the purpose of avoiding a conviction, while this one goes to that extreme length. We are unwilling to go any further in approving instructions of this kind than the rule announced in the *Carleton* case. No case has been called to our attention, and we have not been able to find one which seems to justify us in so doing. Indeed common experience teaches us that juries are prone to view the evidence of one who is on trial for a criminal offense with suspicion, and the court should not, by his conduct or instructions, in any manner disparage the evidence of the accused.

It is further contended that the court erred in receiving the testimony of the state's witnesses by which it was sought to prove confessions of guilt on the part of the plaintiff in error. It is unnecessary to determine this question, for the reason that the judgment must be reversed and a new trial granted on account of the matters hereinbefore considered. It may not be amiss, however, to say that it is the duty of the state when offering witnesses to prove the confessions or admissions of a person charged with crime, to fully qualify its witnesses by showing that such confessions or admissions were made voluntarily, in such a manner and under such circumstances as to make them competent evidence: that it is no part of the duty of the accused or his counsel to supply the element of competency by a cross-examination of the witnesses or otherwise.

For the foregoing reasons, we hold that the court erred in the admission of exhibit "D" in evidence, and in giving instruction numbered 10 to the jury on his own motion. The judgment of the district court is therefore reversed, and the cause is remanded for a new trial.

REVERSED.