**BRUNO et al. v. UNITED STATES.**
No. 7220.

Circuit Court of Appeals, Ninth Circuit.
Nov. 6, 1933.

Mark F. Jones, of Los Angeles, Cal., for appellants.

Peirson M. Hall, U. S. Atty., and P. V. Davis, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

Appellants, together with three other defendants, were charged in the indictment

with having conspired to manufacture, transport, and possess intoxicating liquor in violation of the National Prohibition Act (27 USCA). From the judgment of conviction they have brought this appeal. Following the description of the conspiracy, the indictment specified four overt acts as having been committed by the defendants in pursuance, furtherance, and execution of the conspiracy.

In appellants' brief it is insisted that there is no evidence to support the first overt act. We believe the evidence established all of the overt acts charged. However, proof of any one of the overt acts would be sufficient.

The evidence shows that the prohibition officers early in the month of June, 1929, had observed a Moreland truck making trips to a certain wholesale grocery, situated in the neighborhood of Keller St., Los Angeles, and hauling corn sugar from this establishment. On June 14, 1929, the officers trailed this truck to a point above Tehachapi in Kern county, and later, upon its return trip, intercepted the truck in the town of Mojave, where it was found to contain a large quantity of alcohol in five-gallon cans painted red, some empty cans, and several pressure tanks. The officers arrested the driver, who gave his name as Salvadore Paladino, and was identified as having been seen driving the truck on previous occasions.

The officers thereafter went to the Lee Hicks ranch, located about four miles above Tehachapi, and there placed defendant Murray, who was found in charge of the place, under arrest. On the ranch was found a large still, together with a considerable quantity of mash, and five-gallon cans similar to those which were found on the truck. The officers waited at the ranch, and about 9:30 in the evening defendants Bruno and Trapini stopped their automobile on the highway in front of the ranch, and Bruno went to the ranch house and was arrested. Trapini, who had remained in the car on the highway, was also placed under arrest.

The government agents identified the two appellants, Bruno and Trapini, as having been seen alongside of the truck where it was parked in Mojave after it was seized. At a later date the officers observed a Federal truck being loaded with corn sugar and empty cans at the same place where they had previously seen the Moreland truck loaded in Los Angeles. The evidence shows that the appellants were in close proximity to these trucks at unusual hours, and that appellants stopped their car on the road and conferred with the driver of at least one of these trucks. There was also testimony as to other facts and situations from which the jury were warranted in finding the appellants were active agents in the conspiracy.

The evidence showed that the Moreland truck upon which the alcohol was found had been purchased on contract by one Frank Maria from the Moreland Sales Corporation, and that this contract had later been transferred by that corporation to the Pacific Finance Corporation, to whom numerous payments had been made. Evidence was introduced to show that some of these payments were made by defendant Trapini and some by the Welfare Wholesale Grocery Company. The payments made by this company were by check on an account in the Bank of America, which account was opened in the name of the company by defendant Bruno, who admitted that he was the owner of the Welfare Wholesale Grocery Company.

With respect to these payments, certain records of the Pacific Finance Corporation and the Bank of America were admitted into evidence over the objection of appellants. As we shall point out hereafter, payments upon the purchase price of the Moreland truck were expressly admitted by defendant Trapini and inferentially by Bruno in their testimony. This was all that the evidence objected to was intended to prove, and therefore, if there was any error in the admission of this particular evidence, it in no wise affected the substantial rights of the appellants.

The witness Sigurt Anderson testified that he was connected with the automobile department of the Pacific Finance Corporation. He produced the original contract between the Moreland Sales Corporation and Frank Maria, which was received in evidence without objection. He also produced a purchaser's statement given by the purchaser at the time the contract was signed by Frank Maria, which was marked Government's Exhibit No. 2 for identification. He then produced the original ledger sheet, which was marked Exhibit No. 3 for identification, showing payments on the contract. The witness was then shown what purported to be a notation of change of address, which was marked for identification as Exhibit No. 4. The witness then examined the original ledger sheet showing payments on the truck and testified that the first payment made on August 20th of $117.64 was paid in cash, the next one was paid by check given by Tony

Trapini on the Bank of Italy on September 26, 1928, the third installment was paid on October 26, 1928, by a check of Tony D. Trapini on the Bank of Italy for $107.64, the fourth by check of Tony D. Trapini on the Bank of Italy dated in December for $107.64, the next installment paid was on January 3, 1929, by check of the Welfare Wholesale Grocery Company on the Bank of Italy for $109.79, and the next payment on February 1, 1929, was made by the same grocery company. Witness Anderson further testified that on February 25, 1929, the Welfare Wholesale Grocery Company gave its check for $107.64, payment of which was refused on account of insufficient funds; this check was sent back, and in return there was received a cashier's check on the Bank of Italy. There was another payment on March 6, 1929, by cashier's check. Payments on March 25, 1929, for $107.64, and on April 25, 1929, for $107.64, were both made by checks of the Welfare Wholesale Grocery Company. The payment on June 17, 1929, was by cashier's check.

It should be noted that the fact of the payments and by whom made was testified to with particularity by the witness without objection.

On cross-examination attention was called to certain penciled notations appearing on the face of the original ledger sheet, Exhibit No. 3, which indicated from whom these checks came, and the witness testified that he had placed them on the ledger sheet during the week preceding the trial, and also that he had made these notations from the original cash sheet itself, and that all these records were kept by the automobile department under his supervision. Upon these records being offered in evidence objection was made as follows:

"Mr. Balter: I now offer the records that were marked for identification.

"Mr. Emme: We will object on the ground that no proper foundation has been laid, and on the further ground, as to the particular exhibit No. 3 for identification, that it was brought out in evidence that is not the original entry, but an entry made within the last week.

"Mr. Balter: Well, Your Honor, the rule is well settled where the books are voluminous and it would be a burden to bring them here, that he can make personal records and testify from them.

"The Court: Yes, the witness testified about the large size of the sheets.

"Mr. Balter: Yes, they are very large books, Your Honor.

"The Court: It is a matter of convenience, at least; there is no doubt that is the rule. Overruled. They will be admitted in evidence.

"Mr. Emme: Exception. Exception No. 7."

As appears in the record, the objection urged applied generally to Exhibits No. 2, 3, and 4, upon the ground that no proper foundation had been laid. As to this objection the testimony shows that the exhibits being offered were parts of the original records of the Pacific Finance Corporation, kept under the supervision of witness Anderson, who proudced them in court and testified concerning them. The general objection was properly overruled.

Concerning Exhibit No. 3, there was a special objection that it had been brought out on cross-examination that certain pencil notations were made on this exhibit "within the last week." As to this objection the evidence shows that the exhibit was the original account of Frank Maria with the Moreland Motor Truck Company for the purchase of a Moreland truck involved in this case, which contained the original entries, which made the document admissible in evidence to show these entries. The objection was to the entire document, and there was no request to have the pencil notations erased or the jury instructed to disregard them; further, the testimony shows that these pencil notations were taken from the original cash sheet itself, which record was kept under the supervision of the witness.

In any event, as heretofore noted the witness testified directly and positively as to the payments and by whom made without objection. The only purpose that the pencil notations seemed to have served was to furnish a memorandum of what this witness had testified in his direct examination as to these payments, to which no objection had been interposed. Furthermore, the fact of these payments seems not to have been disputed, as both appellants sought by explanation to give them an innocent interpretation. Trapini testified: "I wouldn't deny various payments to the Pacific Finance Corporation on a Moreland truck. I knew Frank Maria and I was manager of Welfare Wholesale Grocery Company. Frank Maria was a pretty good friend of mine, and he came over there to unload general groceries, and sometimes he came over there and he said, 'Let's see, I

ain't got no time to go over to the Finance Company to pay on the truck; I can't lose an hour or two. Will you please make your own check and I give you the money?' And in a friendly way I said, 'All right.' So he gave me the money and I gave him the check. I made a practice of doing that."

Trapini further testified that he was the manager of the Welfare Wholesale Grocery Company, and had charge of everything, and that the great bulk of merchandise handled by that concern was cane sugar, yeast, and cans. Also that Maria gave him the money because he had no checking account, and that Trapini mailed the checks to the Pacific Finance Corporation as payments on the Moreland truck to save Maria time, and that, when he paid these checks, he was working for the Welfare Wholesale Grocery Company.

Likewise appellant Bruno testified that he made payments on a Moreland truck, although he never owned one; that in 1929 he had a store known as the Welfare Wholesale Grocery Company; that when he was in business people used to come to him and give him money, and he would write checks for them.

Thus the testimony of these appellants expressly admitted or did not question the correctness of the testimony of witness Anderson; they sought to explain that the giving of these checks was merely a matter of accommodation to Frank Maria.

In this connection it is interesting to note that this Exhibit No. 3 shows that at some time after the original document was made out the address of Frank Maria was changed on the face of it to 957 E. Fourth street, which is the same address appearing on the card at the bank bearing the authorized signature of defendant Bruno in the Welfare Wholesale Grocery Company account.

The objection to Exhibit No. 3 was not sufficiently explicit upon which to predicate error. In any event, in view of the admissions of appellants, the penciled notations being on the exhibit were not prejudicial and did not render the exhibit inadmissible.

The other exceptions urged, numbered 3, 4, 5, and 6, are presented together, and relate to the admission of evidence to show the connection of Tony Bruno with certain payments made to the Pacific Finance Corporation, on account of the Moreland motortruck involved in this case. As heretofore pointed out, appellant Bruno tacitly admitted these payments. These exceptions concerned Exhibits 6, 7, 8, and 9, the original bank records of the accounts of the Welfare Whole-

sale Grocery Company and Tony Bruno with the Bank of America, International Branch.

The witness Emile G. Cottave, who testified that she was connected with this bank, brought with her the ledger sheet showing the account of Tony Bruno and the Welfare Wholesale Grocery Company and the original signature card of the Welfare Wholesale Grocery Company. These were offered as Government Exhibit No. 6, and objected to "as being incompetent, irrelevant and immaterial." The court overruled the objection, which was not error.

Exception No. 4 in the assignment of errors sets forth that the court erred in permitting the witness Cottave to testify, over the objection of the defendants, that two cashier's checks were debited against the account of Tony Bruno for the Welfare Wholesale Grocery Company.

According to the transcript, the witness was permitted to testify concerning these cashier's checks without objection, and how they had been charged on the bank records. In relation to this matter the transcript shows that the witness produced the original ledger sheet showing the bank account of Tony Bruno personally, which was offered and received in evidence without objection as Government Exhibit No. 7. The witness was then asked to check the two accounts and ascertain certain disbursements in favor of the Pacific Finance Corporation, which she did, and testified as follows: "On the Tony Bruno account there was issued a cashier's check for $107.64 on June 14, 1929, and on the Wholesale Grocery's account there were charged in favor of the Pacific Finance Corporation the following payments: March 4, 1929, $107.64, which was a cashier's check that was issued; on March 27, 1929, $107.64, and that was all."

No objection was interposed to this testimony. The witness was then shown two checks and asked whether they were two cashier's checks debited against the account of Tony Bruno or the Welfare Grocery account, and she testified "Yes." Continuing, the witness testified: " * * * On March 4 there was a debit of $107.00 to purchase a cashier's check."

Thereupon the following occurred:

"Question [presumably by the attorney for the government]: It was charged against Tony Bruno's account?

"Mr. Bryne: Object to that as being incompetent, irrelevant and immaterial, and no foundation laid.

"The Court: Overruled.

"Mr. Byrne: Exception, please."

This is the only objection which appears in the assignment of errors, and the record also shows that the question was not answered. An additional assignment of error predicated on the ruling set forth in Exception No. 4 is charged in admitting into evidence Exhibit No. 7, but, as stated above, the transcript shows that this exhibit was received without objection.

The admission of government Exhibit No. 8, which was a check drawn by the Welfare Wholesale Grocery Company for the purchase of a cashier's check for $107.64, on March 4, 1929, in favor of the Pacific Finance Corporation, is urged as error under exception No. 5, which appears in the records as follows:

"The Clerk: Government Exhibit 8.

"Mr. Balter: Have you another one there for the Welfare Grocery Company account? A. On March 4, 1929, $107.64, drawn out by the Welfare Wholesale Grocery Company for purchase of a cashier's check in favor of the Pacific Finance Corporation.

"Mr. Balter: I offer that as Government's exhibit next in order.

"Mr. Byrne: Same objection.

"The Court: Overruled.

"Mr. Bryne: Exception, please."

The reference here is to one of the two cashier's checks already noticed in the preceding objection, and the reference "same objection" by referring back is found to be worded: "Object to that as being incompetent, irrelevant and immaterial and no foundation laid."

As this check in the preceding testimony of the witness had been traced in order to show its proper connection with the case, there was no error in admitting the check into evidence.

The argument is made that this evidence was hearsay and that no proper foundation had been introduced for its reception; the witness having admitted that the records which she had with her in court did not show that the checks were ordered or paid for by Tony Bruno, but the witness had previously testified without objection by whom the checks were purchased, and that she knew that the entries were noted in the cashier's register. The witness further explained: "The book in which the cashier makes a record of the purchases of cashier's checks is a rather large book, about a foot by a foot and a half." The transcript of the record shows that at this point the attorney for the government stated that, if appellants' counsel desired, he would produce the book. In view of the testimony of the witness, which had been received without objection, and the tender of the register which seems not to have been accepted, there was no error to admitting the check in evidence.

The only remaining exception noted in appellants' brief was to the admission of the Government's Exhibit No. 9, which was the card showing the signature of Tony Bruno. The ruling of the court was correct.

In support of this appeal appellants' counsel cite but one case, Donner v. State, 72 Neb. 263, 100 N. W. 305, 306, 117 Am. St. Rep. page 789. In that case a certain book was received in evidence containing entries which the witness testified he had made from a tab he used at the South Omaha Stockyards, and from hearing another person read the waybills. Without this evidence the possession of the stolen cattle could not be traced to Donner. The Nebraska court in holding that the admission of this evidence was reversible error, after pointing out that the original entries were made on another book or tab, went on to say: "It further appears that he did not make the other entries in the book from his own examination or knowledge, but from hearing another person read the waybills of the railroad company. He nowhere testifies that he ever compared the entries so made with the waybills themselves, or with his book or tab of original entries, and, strange to say, he was not asked as to whether or not the entries contained in Exhibit D were correct. So it clearly appears that no proper foundation was laid for the introduction of this evidence."

In the case here the original checks and the original ledger sheets were put into evidence. The correctness of the items was testified to by the employee of the bank who had examined the original entries, and all the books and papers were in evidence, with the exception of the cashier's check register, which counsel for the government offered to produce, but which, because of its size, the court did not require. In the case of Stephens v. U. S. (C. C. A.) 41 F.(2d) 440, it is held that it is not error to permit testimony of qualified accountants as to material facts shown by an analysis of complicated accounts, if the documents and books used by the witness are made available to the other side. In this case the government attorney offered to produce the record in court.

■ The record on appeal does not show that the trial court committed any error which affected the substantial rights of the appellants. Under section 269, Judicial Code, as amended February 26, 1919 (28 USCA § 391), the burden of proof is on the appellant to show that evidence alleged to have erroneously been admitted was prejudicial. Simpson v. U. S. (C. C. A.) 289 F. 188; Armstrong v. U. S. (C. C. A.) 16 F. (2d) 62; Johnson v. U. S. (C. C. A.) 59 F. (2d) 42.

Affirmed.